UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELANIE F.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 3:20-cv-05474

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits (DIB).

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.    <u>ISSUES FOR REVIEW</u>

A. Whether the ALJ Properly Evaluated Medical Opinion Evidence

B. Whether the ALJ Properly Evaluated Plaintiff's Statements About Symptoms and Limitations

C. Whether the ALJ Properly Evaluated Lay Witness Statements

D. Whether Plaintiff is Entitled to a Remand for an Award of Benefits

II.    <u>BACKGROUND</u>

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

On March 15, 2017, Plaintiff filed an application for DIB, alleging a disability onset date of December 8, 2016. Administrative Record ("AR") 285–86. Plaintiff's application for DIB was denied upon official review and upon reconsideration. AR 184, 196. A hearing was held before Administrative Law Judge ("ALJ") Rebecca L. Jones on November 2, 2018. AR 112–83. On August 26, 2019, ALJ Jones issued a decision finding that Plaintiff was not disabled. AR 87–104. On April 24, 2020, the Social Security Appeals Council denied Plaintiff's request for review. AR 1–4.

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of fibromyalgia, right median neuropathy carpal tunnel syndrome at the wrist, and a torn left rotator cuff. AR 92. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of light work. AR 94. Relying on vocational expert testimony, the ALJ found at step four that Plaintiff could perform past relevant work as a loan officer, lending activities supervisor, loan review analyst, hospital admitting clerk, and admitting officer; therefore, the ALJ found Plaintiff was not disabled at step four and did not move to step five. AR 103.

A. <u>Whether the ALJ Properly Evaluated Medical Opinion Evidence</u>

Plaintiff first contends the ALJ improperly assigned little weight to the opinions of treating physicians Walter Bramson, M.D., and Mark Hansen, M.D. Dkt. 17, pp. 4–14.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth Circuit law, opinions from non-examining medical sources that contradict a treating physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g., Revels*, 874 F.3d at 662 (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

1. <u>Opinion of Dr. Bramson</u>

Dr. Bramson, Plaintiff's treating physician in California from 2015 to 2017, completed a medical source statement on April 18, 2017. AR 467–71. Therein, he stated that Plaintiff's fibromyalgia syndrome caused pain in the neck, back, hands, shoulders, knees, and elbows, as well as xeropthalmia, fatigue, and paresthesias. AR 468. He went on to state that this pain could not be treated through medication without unacceptable side effects. *Id.* As for the limitations this condition could be expected to cause, Dr. Bramson stated that Plaintiff could lift ten pounds occasionally, sit for three

hours, and stand or walk for three hours in a typical eight-hour workday. He stated that Plaintiff would rarely be able to climb ramps or stairs, stoop, kneel, crouch, or crawl in a work setting, and could never climb ladders or balance. AR 470. He found that Plaintiff had significant limitations in repetitive reaching, handling and fingering, could be expected to be absent from work more than three times a month, was not malingering, and would be "unable [to] find or keep employment." AR 469–71.

The ALJ gave little weight to Dr. Bramson's opinion on Plaintiff's limitations, reasoning that it was: (1) inconsistent with his own treatment notes; (2) inconsistent with other medical evidence in the record; (3) inconsistent with Plaintiff's activities of daily living; and (4) invalid insofar as Dr. Bramson opined on Plaintiff's credibility and ultimate ability to work. AR 101.

With respect to the ALJ's first reason, "Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). An ALJ need not accept a medical opinion that is brief and conclusory when the ALJ faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding treating opinion "conclusory" and supported by "little explanation," where ALJ

"overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"); *Revels*, 874 F.3d at 663 (finding ALJ erred in rejecting treating physician's opinion as supported by "little explanation," where record included treatment notes supporting the opined limitations).

Here, the ALJ cited Dr. Bramson's "exam findings, which typically revealed some degree of cervical range of motion limitations, but yielded generally non-acute overall findings." AR 101–02. However, the Plaintiff's fibromyalgia condition is diagnosed "entirely on the basis of the patient's reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, "normal findings" in objective physical exams do not contradict Dr. Bramson's conclusions regarding the effect of Plaintiff's fibromyalgia. The illusory tension between the physical exams and Dr. Bramson's findings does not constitute a specific and legitimate reason for discounting the latter.

The ALJ contrasts Dr. Bramson's findings from December 2016 and January 2017, making note of Plaintiff's marked improvement in the latter examination. However, Dr. Bramson noted that this was likely due to Plaintiff's cessation of work, consistent with his December 2016 finding that work exacerbated Plaintiff's symptoms, as well as Plaintiff's testimony indicating the same. AR 135, 421, 424. Other treatment notes indicated Plaintiff's pain had spread from the "corner of her body" to all of her joints over time, that Plaintiff had sought treatment at a holistic clinic but could no longer afford it, and that Plaintiff had pain in both shoulders with swelling. AR 418, 426, 430.

As to the ALJ's second reason, a conflict between treatment notes and findings elsewhere in the medical record and a treating physician's opinion may constitute an

adequate reason to discount the opinions of the treating physician. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Yet ALJs may not "cherry-pick" evidence from the record to support their findings. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding that the ALJ erred by selectively picking some entries in the record while ignoring others). Here, substantial evidence does not support the ALJ's finding that Dr. Bramson's opinion was contradicted by treatment notes during the period at issue.

The ALJ's decision provides a thorough discussion of objective evidence that purports to undermine Dr. Bramson's findings. *See* AR 96–98. This includes observations of Plaintiff's normal gait, well-groomed presentation with no acute distress, and lack of reliance on assistive devices. The ALJ cited to several instances in the record in which Plaintiff showed intact or near-intact grip strength and manual dexterity, intact cognition, and only "some" limitation in the ranges of motion for her cervical spine, neck, and right wrist. *See id.* (citing AR 525–26, 530, 540, 542). Finally, several of these objective findings are simply notes of Plaintiff's self-reported daily activities. *Id.* (citing AR 532–34, 543–45, 651). These findings do not contradict Plaintiff's fibromyalgia pain complaints. Plaintiff's adequate performance on tests of manual dexterity also does not indicate that she could perform manual tasks repetitively over the course of a single eight-hour workday, let alone a 40-hour work week.

With respect to the ALJ's third reason, inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins*, 261 F.3d at 856. Here, the ALJ characterized Plaintiff's lifestyle as a "robust range of activities,

including driving, interstate traveling, cooking, and jewelry-making." AR 101. Yet the ALJ does not demonstrate how these activities, engaged in over a period of several years, would contradict Plaintiff's claims of fatigue and pain. The ALJ did not account for evidence that Plaintiff's ability to drive, cook, and perform hobbies was limited in both exertional level and duration by her symptoms; nor did the ALJ inquire of Plaintiff during the hearing to clarify what Plaintiff did while traveling, or whether this travel exacerbated her fatigue during and after the time spent away.

The travels documented since 2016 include a 2017 trip from California to Washington -- while Plaintiff and her husband were moving to a different residence – and to Alabama to attend their son's graduation from military officer training -- and to Mississippi to attend their son's graduation from military pilot training. AR 132, 145, 520, 533. Elsewhere in the opinion, the ALJ points to Plaintiff's ability to "respond to questions from medical providers, provide detailed historical information in detailed, multipage forms, manage her own legal matters, and enter into legally binding agreements on her own behalf[,]" citing to agreements between Plaintiff and attorneys who have represented her in the instant case. AR 99 (citing AR 219, 221, 239–40, 246, 248). This reasoning is unpersuasive -- if a claimant's ability to secure legal representation and to work with medical professionals and attorneys to pursue an appeal for disability benefits would be indicative of the ability to work, this analysis would lead to the absurd result that only a person who cannot communicate with counsel or physicians would be considered disabled. The applicable regulations and case law neither suggest, nor mandate, this result.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

As to the ALJ's final reason—that Dr. Bramson's statements regarding Plaintiff's ability to work and her credibility were legal conclusions reserved for the Commissioner of Social Security—is not sufficient on its own to justify discounting the statement. A doctor's opinion that it was unlikely the claimant could sustain full-time competitive employment is not a conclusion reserved to the Commissioner, but is "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment given the many medical and mental impairments [claimant] faces and her inability to afford treatment for those conditions." *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).

Dr. Bramson's conclusion that Plaintiff was not a malingerer was a medical assessment -- not a legal conclusion. Other examining medical sources made similar statements: Dr. Walston, an examining physician whose opinion the ALJ gave "partial weight," indicated Plaintiff was an "adequate historian"; while Dr. Yelverton, the psychological consultative examiner, stated that Plaintiff showed "no indications of malingering or factitious behavior." AR 524, 534. Dr. Bramson's similar statements regarding the likelihood Plaintiff could work, or was malingering, did not intrude into the province of the Commissioner. This was not a clear and convincing reason to discount Dr. Bramson's opinion.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination of whether an error is harmless requires a "case-

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, the ALJ's error was not harmless. Had the ALJ properly considered the opinions of Dr Bramson, the ALJ may have incorporated limitations from these opinions in making a determination as to Plaintiff's residual functional capacity. Had the ALJ incorporated such limitations, the ultimate disability determination may have changed. Accordingly, the ALJ's error was not harmless and requires reversal.

### 2. Opinion of Dr. Hansen

Dr. Hansen, Plaintiff's treating physician from 2017 forward, completed a medical source statement on November 27, 2018. AR 706–08. Therein, he stated that Plaintiff could sit for four hours and stand or walk for less than two hours of an eight-hour workday. AR 707. He also stated that Plaintiff would need at least two unscheduled breaks of five minutes each during a workday, could occasionally lift loads under ten pounds and rarely lift ten pounds, and could occasionally twist, stoop, crouch, and climb stairs, but could never climb ladders. He found that Plaintiff's medication regime of hydrocodone, tramadol, gabapentin and Topamax would cause side effects of drowsiness and deficits in concentration. AR 707. Finally, he found Plaintiff would be off task for about 30% of an average workday and would be absent five or more times per month. AR 708.

The ALJ gave little weight to Dr. Hansen's opinion, reasoning that it was (1) inconsistent with other medical evidence; (2) inconsistent with Plaintiff's activities of daily living; (3) seemingly based on Plaintiff's subjective self-reports; (4) indicative of an

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9

onset date well before Dr. Hansen actually began treating Plaintiff; and (5) an improper assessment of Plaintiff's credibility. AR 103.

The ALJ's first two reasons are similar to those given for the rejection of Dr. Bramson's opinion on Plaintiff's limitations. As discussed above, they are not supported by substantial evidence.

With respect to the ALJ's third reason, an ALJ may not reject a medical source opinion because it is based on the claimant's self-reports when the medical source analyzes those self-reports using objective measures. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (2017). Here, Dr. Hansen indicated that his opinion was based on physical examinations of Plaintiff as well as history and medical file. AR 539. The ALJ did not offer any example within Dr. Hansen's opinion that would indicate he had relied heavily on Plaintiff's self-reports rather than on objective measures. The ALJ's statement that Dr. Hansen's opinion "seemed" to be informed by self-reports is speculative. *See White ex. Rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."). Objective evidence supporting Dr. Hansen's opinions about Plaintiff's conditions and limitations would include the April 3, 2018, June 28, 2018, and September 24, 2018 Chart Notes showing that Plaintiff had been examined by Dr. Hansen and he found her to be in excruciating pain, taking many medications to try and manage the pain, but being frustrated that nothing seemed to work. AR 542-543. In addition, a specialist, Dr. Kirk Danielson, M.D., evaluated Plaintiff In August 2018 on referral from Dr. Hansen. AR 547-555. The testing showed that Plaintiff had a "severe right median neuropathy at the wrist (carpal Tunnel syndrome) affecting motor and

sensory components." AR 551. See also, AR 12 (Plaintiff's 2020 evaluation for a scheduled surgery concerning carpal tunnel syndrome).

With respect to the fourth reason, Plaintiff concedes Dr. Hansen could not render a retroactive opinion dating to 2008. Dkt. 17, p. 14. However, this does not undermine his entire opinion, particularly when Plaintiff alleged disabling impairments as of December 2016. Thus, this was not a specific reason to reject Dr. Hansen's opinion as to Plaintiff's condition on or after the date on which he began treating Plaintiff.

Finally, the ALJ's fifth reason for rejecting Plaintiff's opinion was Dr. Hansen's indication, in a check box on the evaluation form, that Plaintiff was not a malingerer. AR 102. As stated above, this was a medical assessment that Plaintiff did not show signs of malingering in her dealings with Dr. Hansen, and did not amount to a legal conclusion as to her overall credibility. And, as stated above, Drs. Bramson and Hansen were not the only medical sources that rendered such an opinion. *See* AR 524, 534. Therefore, this was not a specific, legitimate reason for discounting Dr. Hansen's opinion on Plaintiff's limitations.

B. <u>Whether the ALJ Properly Evaluated Plaintiff's Symptom Statements</u>

Plaintiff also assigns error to the ALJ's evaluation of her own statements describing symptoms and limitations. Dkt. 17, p. 16.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*, 871 F.3d at 678. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the

second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needs to make findings sufficiently specific to allow this Court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins*, 261 F.3d at 856–57. The ALJ's findings here, while detailed, nevertheless failed to rise to the level of specific, clear and convincing reasoning for rejecting Plaintiff's testimony.

Here, Plaintiff alleged that she suffered from fatigue, hand and wrist pain, confusion, daily headaches, muscle tension, and dry mouth, and had difficulty being in crowds due to her pain, which resulted from a neck injury and from fibromyalgia. AR 141, 150, 155. She also stated that the medications she took to treat these conditions caused significant side effects, including cramping, diarrhea, and memory issues. AR 135, 139, 147. Plaintiff alleged that this litany of symptoms and medication side effects limited her ability to do many basic tasks, including sitting, standing, or walking; lifting,

carrying, grasping, or holding items; preparing food or performing basic grooming; holding a conversation, staying focused, remembering things, or following books; writing or typing; and managing her bowels. AR 140, 147, 152, 154–56, 161.

The ALJ rejected Plaintiff's testimony on the bases of (1) internal inconsistencies, including statements regarding Plaintiff's activities of daily living; (2) inconsistency with objective medical evidence; and (3) Plaintiff's failure to seek more aggressive treatment. AR 95–99.

With respect to the ALJ's first reason, an ALJ may consider inconsistent statements by a claimant in assessing her subjective complaints. *Tonapetyan*, 242 F.3d at 1148. Here, when asked about why she declined surgery for her allegedly disabling carpal tunnel syndrome, Plaintiff said she had to forego surgery for financial reasons and that she had insurance only from July to November 2017. AR. 95, 118–19, 130, 143–44. Plaintiff said she could not afford insurance premiums. AR 143–44.

But, as the ALJ noted, Plaintiff was able to undergo extensive chiropractic care and massage therapy. AR. 95, 556–644, 699–704. The ALJ stated that Plaintiff's lack of insurance did not explain why she did not seek treatment at a free or low-cost clinic. AR 95. The ALJ also emphasized that Plaintiff spent $50,000 to remodel her house. AR. 95, 163–65. However, evidence submitted to the Appeals Council indicates that Plaintiff planned to undergo surgery for her carpal tunnel condition in March 2020. AR 17. As to the home remodel, the ALJ did not inquire as to the nature of this remodel, or as to whether a remodel was necessary for general health and safety (for example, to fix faulty stairs, leaky roof, electrical problems, or plumbing), or to accommodate the specific needs of Plaintiff or her disabled husband in their new home. In addition, the

ALJ did not inquire as to whether a free or low-cost clinic was an option in Plaintiff's area. *See* SSR 16-3p, 2017 WL 5180304, at *10 ("[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services.")

As to Plaintiff's daily activities, the record does not demonstrate that plaintiff has engaged in these activities either at a frequency or to an extent that would indicate that she can "spend a substantial part of . . . her day performing" them. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). And although the ability to drive and plan trips could conceivably be inconsistent with parts of plaintiff's testimony, the record does not contain evidence about how frequently plaintiff engages in these activities or what physical functions they require as plaintiff performs them. *See Trevizo*, 871 F.3d at 682. Plaintiff and her husband both stated that driving was impossible without making frequent stops. AR 150, 382. In addition, Plaintiff's travels, as the ALJ characterized them, "throughout the United States", consisted of a trip to Alabama and Mississippi to attend their son's graduation from military officer training and pilot training -- and between California and Washington so Plaintiff and her spouse could relocate to a new residence —with no indication as to how long these trips took or what accommodations Plaintiff may have made to adapt so that she could complete these trips. AR 99, 132, 145.

Second, with respect to Plaintiff's pain and fatigue, the ALJ found that objective findings did not support the degree of limitation plaintiff alleged. AR 17. Inconsistency with objective evidence may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the

degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995) (internal quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ lacked support for finding that the objective evidence undermines plaintiff's testimony about her condition. While the ALJ cited Plaintiff's performance on some physical exams, it is unclear how these undermine plaintiff's claims of pain and resulting limitations, which the record suggests are due to fibromyalgia. AR 96–99; *see Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment").

With respect to the ALJ's third reason, an ALJ may rely on conservative treatment in discounting a claimant's symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that over-the-counter pain medication is "conservative treatment"). However, "consistent use of Norco, a strong opioid medication, cannot accurately be described as 'conservative' treatment." *Bucknell v. Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (unpublished) (collecting cases); *see O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) (collecting cases); *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (unpublished) (holding narcotic painkillers, with spinal injections and radiofrequency ablation, not conservative); *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (unpublished) (describing hydrocodone as "strong pain reliever"). *But see Jesus C. v. Berryhill*, No. ED CV 17-2103-PJW, 2018 WL 5984839, at *2 (C.D. Cal.

Nov. 13, 2018) (unpublished) (finding treatment conservative where plaintiff was prescribed Oxycodone for only 2 of 27 months during relevant period).

If the claimant had cause for not complying with treatment recommendations, failure to follow up with certain treatment referrals is not a clear and convincing reason to discount the claimant's testimony. *Byrnes*, 60 F.3d at 641. In addition, if there is not substantial evidence to show that the claimant could reasonably remedy the condition with the treatment at issue—i.e., if the claimant had followed the recommended course of treatment, the condition was reasonably remediable and likely would have been resolved because of the efficacy of that treatment as to the particular claimant—then there is not clear and convincing evidence to discount the claimant's testimony. *Id.*

Here, the record shows Plaintiff was prescribed a combination of medications, including the narcotic pain medications tramadol and hydrocodone, as well as the anti-convulsant medications gabapentin and Topamax. *See, e.g.* AR 483, 542. This cannot be fairly described as a conservative course of treatment. Further, Dr. Bramson's records indicate that Plaintiff experienced some success managing her pain at a holistic clinic but ultimately could not continue due to the expense. Plaintiff also stated that she was disenrolled from a Medicaid insurance plan because she did not qualify, and that buying insurance in the open marketplace would result in premiums of at least $600 per month, with a large deductible. AR 143–44. The ALJ's speculation as to Plaintiff's other financial decision-making, such as a home renovation, without inquiry as to whether that renovation might be necessary to ascertain the nature of the construction work or reasons for a remodel – whether for general health and safety, to accommodate her or

her husband's impairments, or otherwise -- did not amount to a specific, clear and convincing reason to discount Plaintiff's testimony.

C. <u>Whether the ALJ Properly Evaluated Lay Witness Testimony</u>

Finally, Plaintiff avers that the ALJ improperly rejected a lay witness statement from her husband, Steven F. Dkt. 17, pp. 14–16.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Mr. F completed a lay witness questionnaire on October 6, 2018. AR 380–84. Therein, he stated that Plaintiff had trouble sleeping due to headaches and neck pain, that pain flare-ups made it difficult to keep appointments, that pain and fatigue required Plaintiff to lay down for at least 30 minutes every day, and that Plaintiff had difficulty holding or carrying items. AR 380–82. He also stated that the pain medications prescribed to Plaintiff caused abdominal cramps and other problematic side effects. AR 381.

The ALJ gave little weight to Mr. F's statement, reasoning that it was (1) inconsistent with objective medical evidence; (2) inconsistent with Plaintiff's activities of

daily living; and (3) necessarily based only on his own observations and Plaintiff's subjective complaints. AR 103. The first two reasons are essentially the same reasons as those given for rejecting Plaintiff's own testimony. As to the third reason, it is difficult to conceive of circumstances where a lay witness statement would not be primarily based on the lay witness's own observations of the person they are giving a statement about. The ALJ erred by not giving arguably germane reasons to reject Mr. F's opinion.

D. <u>Whether Plaintiff is Entitled to a Remand for an Award of Benefits</u>

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted).

On remand, additional proceedings are appropriate because there is ambiguity concerning the lack of findings at step five. Consequently, the ALJ must re-evaluate the medical opinion evidence, the Plaintiff's statements, and lay witness statements. *See supra* Section A. Additional evidence may be taken to complete the record and resolve ambiguities. Conflicts between the opinions of Drs. Bramson and Hansen, examining medical consultants, and non-examining medical advisors, as well as the lack of findings at step five of the sequential evaluation, are outstanding issues requiring resolution before a disability determination can be properly made.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ harmfully erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to: offer Plaintiff an opportunity for another hearing;

further evaluate the medical opinions and obtain additional medical evidence if an expansion of the record would be useful; further evaluate Plaintiff's functional capacity, including ordering an examination if necessary; re-evaluate Plaintiff's testimony and subjective statements about symptoms; and if necessary, take vocational evidence to evaluate Plaintiff's residual functional capacity and resolve any apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles; and, if step five is reached, make findings at step five as to whether Plaintiff may perform other jobs that exist in significant numbers in the national economy.

Dated this 13th day of May, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge